UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Timothy Markgraf,<br><br>    Plaintiff,<br><br>v.<br><br>State of Minnesota Department of Human Services,<br><br>Tony Lourey, in his individual and official capacity as the Commissioner of the Department of Human Services,<br><br>    Defendants. | Case No.<br><br>**COMPLAINT**<br>(JURY TRIAL DEMANDED) |

## INTRODUCTION

1. This disability discrimination and failure to accommodate case is brought under the Americans with Disabilities Act and Minnesota Human Rights Act.

## PARTIES

2. Plaintiff is an individual who resides in Minnesota. At all relevant times herein, Plaintiff was an employee of the State of Minnesota.

3. The State of Minnesota is a government entity comprised of executive, legislative, and judicial branches.

4. The State of Minnesota operates the State of Minnesota Department of Human Services ("DHS").

5. Tony Lourey is an individual who serves as the Commissioner of DHS.

6. At all times relevant herein, Plaintiff was an "employee" within the meaning of 42 U.S.C. § 12111(4) and Minn. Stat. § 363A.03.

1

7. At all times relevant herein, Defendant was Plaintiff's "employer" within the meaning of 42 U.S.C. § 12111(5) and Minn. Stat. 363A.03.

## JURISDICTION AND VENUE

8. This action arises under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA") and Minnesota Human Rights Act, Minn. Stat. § 363A.01, *et seq.* ("MHRA").

9. This Court has original jurisdiction over Plaintiff's ADA claims pursuant to 28 U.S.C. § 1331.

10. This Court has supplemental jurisdiction over Plaintiff's MHRA claims pursuant to 28 U.S.C. § 1367.

11. Venue is proper under 28 U.S.C. § 1391 because the unlawful practices described herein were committed in the District of Minnesota.

## FACTUAL BACKGROUND

12. Plaintiff has worked his entire career in human services and related fields.

13. In December, 2014 Plaintiff underwent brain surgery to remove a tumor.

14. As a result of the surgery, Plaintiff suffered full and permanent hearing loss in his left ear. As such, Plaintiff's disability is deafness in his left ear.

15. In the months following his surgery, Plaintiff attended medical appointments with a neurologist, audiologist, and primary care physician on several occasions and of which Defendant was aware.

16. On or about January 9, 2015 Plaintiff interviewed with Defendant State of Minnesota Department of Human Services ("DHS").

17. DHS is the State of Minnesota's largest agency and provides service and assistance relating to health care, economic assistance, child welfare, and services for the elderly and for individuals with disabilities.

18. At his interview, Plaintiff disclosed his recent surgery and the corresponding loss of hearing that accompanied it. Plaintiff requested permission to position himself so that his right ear, from which he was able to hear, was directed towards the interviewers which would better allow him to hear.

19. On or about March 3, 2015, DHS offered Plaintiff employment in the position of Children's Services Program Supervisor - Child Welfare Training System.

20. Plaintiff began his employment on or about April 6, 2015.

21. About this same time, DHS hired another employee, Tracy Crudo (hereafter "Crudo"), in the same position as Plaintiff. Upon information and belief, Crudo does not have a disability.

22. Both Plaintiff and Crudo reported to Lori Munsterman (hereafter "Munsterman"), Quality Assurance Manager of DHS.

23. Munsterman reported to Jamie Sorenson, Director of Child Safety and Permanency Division of DHS.

24. Munsterman reported to Jim Koppel (hereafter "Koppel"), Assistant Commissioner of DHS. Upon information and belief, Koppel retired in June, 2018.

25. Koppel reported to Emily Johnson Piper, who has since been replaced by Defendant Tony Lourey (hereafter "Lourey"), DHS Commissioner.

26. At all times during Plaintiff's employment, DHS was aware of Plaintiff's disability.

27. After his employment began, Plaintiff was assigned an office.

28. Upon entering his office, Plaintiff observed that his desk was positioned in such a way that his left ear would be facing the door. Plaintiff realized that this would cause difficulty hearing people who entered, or were speaking to him from the entryway, of his office.

29. Plaintiff requested an accommodation from Munsterman. Plaintiff requested that Munsterman reposition Plaintiff's desk so that Plaintiff's right ear would be directed closer to the door which would allow him to hear people entering or talking from the entryway of the door.

30. Munsterman denied Plaintiff's request for an accommodation and did not propose any other accommodations. Munsterman simply informed Plaintiff that the request was denied on the basis of the building policy. Munsterman did not provide any additional details as to why the request was denied or what building policy prevented the change.

31. Throughout 2015, Plaintiff became aware that he was being treated differently than other employees who were not members of Plaintiff's protected class.

32. In particular, Plaintiff became aware that he was being treated differently and less favorably than Crudo, who had been hired at the same time and in the same position as Plaintiff.

33. Upon information and belief, Munsterman did not want, nor took any action, to provide an accommodation for Plaintiff.

34. Plaintiff noticed that Munsterman was giving Plaintiff additional job duties and responsibilities that she was not giving to Crudo.

35. In October, 2015 Crudo had a conversation with Plaintiff in which she informed Plaintiff that she observed that Munsterman kept giving him more and more work.

36. DHS did not give Crudo additional job duties and responsibilities.

37. Among the additional responsibilities, Plaintiff was placed in charge of reviewing child mortality, reviewing State College system contracts, reviewing contracts pertaining to attorney work, given training duties over other Departments, and given other responsibilities.

38. Upon information and belief, Munsterman continued giving Plaintiff additional work in order to make it appear that Plaintiff was not able to perform his job.

39. Curiously, and notwithstanding that Munsterman kept giving Plaintiff additional job duties and responsibilities, Munsterman also made the decision to extend Plaintiff's probationary period by an additional ninety (90) days on the basis that his work was not satisfactory.

40. Prior to being informed that his probationary period was being extended, Plaintiff had not received any verbal or written warnings, any negative reviews, or other indicia from DHS that Plaintiff was not performing his job duties satisfactorily.

41. Upon information and belief, Munsterman did not extend Crudo's probationary period.

42. Plaintiff believes that Munsterman was targeting Plaintiff because of his disability and because she did not want to accommodate his disability.

43. During Plaintiff's December, 2015, review, Munsterman made several comments to Plaintiff that his ability to communicate with other employees was a problem.

44. These communication issues, as Plaintiff learned, were the result of his left ear deafness. Plaintiff again informed Munsterman that he needed an accommodation for his deafness because Plaintiff believed his deafness was causing some of these issues.

45. In or around January or February, 2016 Plaintiff submitted a request for an accommodation for his deafness to Human Resources ("HR").

46. During a conversation with Munsterman on or about February 12, 2016, Munsterman acknowledged that she was aware that Plaintiff was requesting an accommodation under the ADA.

47. Munsterman did not undertake any effort to provide Plaintiff with an accommodation nor did Munsterman engage in the interactive process with Plaintiff.

48. On or about February 15, 2016 Plaintiff provided documentation for his accommodation request to his medical provider in order to obtain certification of his medical needs.

49. At no point during Plaintiff's employment with DHS did DHS provide an accommodation to Plaintiff.

50. Throughout Plaintiff's employment, DHS failed to engage in an interactive process with Plaintiff to determine whether any and, if so, what accommodations were available to Plaintiff.

51. In or around the end of February, 2016, HR contacted Plaintiff and requested documentation from his medical provider pertaining to his disability.

52. Notwithstanding Plaintiff's efforts to obtain an accommodation, DHS failed to follow its own policy, the Minnesota Affirmative Action Plan ("MAAP").  MAAP dictated that DHS should have provided Plaintiff with assistance, services, and options for accommodations.

53. Plaintiff obtained another accommodation request from his physician but did not receive a response as to whether DHS would make an accommodation.

54. Instead, on or about March 18, 2016, while his request for an accommodation was pending, Plaintiff was terminated from his employment with DHS.

## CAUSES OF ACTION

### COUNT I

**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**
**42 U.S.C. § 12101,** *et seq.* **(DISABILITY DISCRIMINATION)**

55. Plaintiff incorporates the foregoing paragraphs of his Complaint by reference.

56. The Americans with Disabilities Act ("ADA") provides that it is an unlawful employment practice to "discriminate against a qualified individual on the basis of a disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

57. The ADA defines a "disability" as: (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment.... 42 U.S.C. § 12102(1).

58. The ADA mandates the definition of disability to "be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter." 42 U.S.C. § 12102(4)(A).

59. Furthermore, "[a]n impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." 42 U.S.C. § 12102(4)(D).

60. Major life activities include, but are not limited to "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

61. Plaintiff suffered from an impairment that substantially and materially limited one or more major life activities–hearing–and Plaintiff has a record of such impairment.

62. Defendants received documentation from Plaintiff and were aware of Plaintiff's disability.

63. Defendants' conduct identified herein violated 42 U.S.C. § 12112(a).

64. As a result of Defendants' conduct in direct violation of the ADA, Plaintiff has suffered loss of past and future income, mental anguish, emotional distress and other damages in an amount in excess of $75,000.00.

65. Defendants committed the above-alleged facts with malice, reckless disregard or deliberate disregard for the rights and safety of Plaintiff. As a result thereof, Plaintiff is entitled to punitive damages.

## COUNT 2

### VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### 42 U.S.C. § 12101, *et seq. (FAILURE TO ACCOMMODATE)*

66. Plaintiff incorporates the foregoing paragraphs of his Complaint by reference.

67. The ADA provides that discrimination includes the failure to make reasonable accommodation for the individual's disability. 42 U.S.C. § 12112(b)(5)(a). Reasonable accommodations include acquisition or modification of equipment or devices and other similar accommodations for individuals with disabilities. 42 U.S.C. § 12111(9)(b).

68. Plaintiff notified Defendants of his medical conditions and requested reasonable accommodations.

69. Defendants failed to reasonably accommodate Plaintiff's known disability, and instead terminated him during the pendency of his accommodation request.

70. Defendants' conduct identified herein is discriminatory under 42 U.S.C. § 12112(b)(5)(a), and therefore violates 42 U.S.C. § 12112(a).

71. As a result of Defendants' conduct, Plaintiff has suffered loss of past and future income, mental anguish, emotional distress and other damages in an amount in excess of $75,000.00.

72. Defendants committed the above-alleged facts with malice, reckless disregard or deliberate disregard for the rights and safety of Plaintiff. As a result thereof, Plaintiff is entitled to punitive damages.

### COUNT 3

**VIOLATION OF THE MINNESOTA HUMAN RIGHTS ACT**
**Minn. Stat. § 363A.01** *et seq.* *(DISABILITY DISCRIMINATION)*

73. Plaintiff incorporates the foregoing paragraphs of his Complaint by reference.

74. Minn. Stat. § 363A.08 of the Minnesota Human Rights Act provides that it is an unlawful employment practice for an employer to discharge or discriminate against any individual with respect to the compensation, terms, conditions, or privileges of employment, because of such individual's disability. A disability under Minn. Stat. § 363A.03(12) is "any condition or characteristic that renders a person a disabled person. A disabled person is any person who (1) has a physical, sensory, or mental impairment which materially limits one or more major life activities; (2) has a record of such impairment; or (3) is regarded as having such an impairment."

75. Defendants' conduct detailed herein violated Minn. Stat. § 363A.08.

76. As a result of Defendants' conduct in direct violation of the MHRA, Plaintiff has suffered loss of past and future income, mental anguish, emotional distress and other damages in an amount in excess of $75,000.00.

77. Defendants committed the above-alleged facts with malice, reckless disregard or deliberate disregard for the rights and safety of Plaintiff. As a result thereof, Plaintiff is entitled to punitive damages.

## COUNT 4

### VIOLATION OF THE MINNESOTA HUMAN RIGHTS ACT
### Minn. Stat. § 363A.01 *et seq.* *(FAILURE TO ACCOMMODATE)*

78. Plaintiff incorporates the foregoing paragraphs of his Complaint by reference.

79. Minnesota Statute § 363A.08, subd. 6, makes it an unfair employment practice for an employer "not to make reasonable accommodation to the known disability of a qualified disabled person ... unless the employer ... can demonstrate that the accommodation would impose an undue hardship on the business."

80. Plaintiff suffers from an impairment that substantially and materially limits one or more major life activities and has a record of such impairment.

81. Defendants failed to reasonably accommodate Plaintiff's known disability.

82. The conduct of Defendants described herein violates Minn. Stat. § 363A.08 of the Minnesota Human Rights Act.

83. As a result of Defendants' conduct in direct violation of the MHRA, Plaintiff has suffered loss of past and future income, mental anguish, emotional distress and other damages in an amount in excess of $75,000.00.

84. Defendants committed the above-alleged facts with malice, reckless disregard or deliberate disregard for the rights and safety of Plaintiff. As a result thereof, Plaintiff is entitled to punitive damages.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Timothy Markgraf asks for judgment against Defendants as follows:

1.     That the practices of Defendants complained of herein be determined and adjudged to constitute disability discrimination and failure to accommodate in direct violation of the ADA, 42 U.S.C. § 12101, *et seq.* and Minn. Stat. § 363A.01, *et seq.;*

2.     That Plaintiff be awarded all relief available under the ADA, 42 U.S.C. § 12101, *et seq.*, and Minn. Stat. § 363.01 *et seq.,* including punitive damages;

3.     For compensatory damages for mental anguish and emotional distress in an amount in excess of $75,000;

4.     For an award to Plaintiff of his attorney's fees, penalties, and costs incurred in bringing this action;

5.     For a civil penalty against Defendants pursuant to Minn. Stat. § 363A.01, *et seq.;*

6.     For all such other and further relief available as this Court deems just and equitable.

PLAINTIFF DEMANDS A JURY TRIAL.

Dated January 10, 2019.                             **TYLER W. BRENNAN LAW, LLC**

/s/ Tyler W. Brennan
Tyler W. Brennan, #0397003
T3 Building
323 N. Washington Ave. #200
Minneapolis, MN 55401
Phone: (612) 351.0084
Fax: (612) 354.4152
E-mail: tyler@tylerwbrennanlaw.com

*Attorney for Plaintiff*